William C. Hecht, Jr., J.
A number of claimants in the above-entitled condemnation proceeding move to incorporate in the final decrees, in lieu of interest on the awards at 4% per annum from the date of taking to the date the awards are ready for payment, a provision for an allowance calculated on the basis of the court’s finding of the respective annual net rental values of the several acquired premises prorated according to time, or, in the event such relief is denied, then interest on the awards at the rate of 6% per annum. Subdivision 2 of section 3-a of the General Municipal Law, originally enacted in 1939 and re-enacted in 1956, provides: ‘ ‘ The rate of interest to be paid upon any judgment or accrued claim against the municipal corporation arising out of condemnation proceedings * * * shall not exceed four per centum per annum.”
Claimants urge that I should disregard this statute upon the ground that, during the period from February 28, 1958 (title vesting date) to the entry of the final decree, the 4% rate is factually insufficient to meet the constitutional guarantee of just compensation required by the due process clause of the Fourteenth Amendment of the Federal Constitution, and by section 7 of article I of the New York State Constitution.
Their argument is that: (a) 6% is the maximum general rate of interest prescribed by the General Business Law (§ 370); and (b) 6% is factually now, and has been since February 28, 1958, “ the fair rate of interest for the use of money in the open money market in New York City where money is borrowed without collateral and where the lender does not receive income tax exemption.”
No competent proof was tendered in support of allegation (b). However, even if it were, that would not warrant granting the motion. In view of the explicit holding in Matter of City of N. Y. (Bronx Riv. Parkway) (284 N. Y. 48, affd. sub nom. A. F. & G. Realty Corp. v. City of New York, 313. U. S. 540) sustaining the constitutionality of the 1939 predecessor statute, subdivision 2 of section 3-a of the General Municipal Law may not be declared unconstitutional as applied to the facts alleged by claimants. If the appellate courts disagree with this conclusion, claimants will have the opportunity to offer proof of their allegation on the remand.
*611 In the Bronx River Parkway case (supra) the court said, per Sears, J. (284 N. Y. 48, 54-55): “ The claimants contend that the 1939 statute denies them the equal protection of the laws inasmuch as the general interest rate in the State of New York is six per centum (Gen. Business Law, § 370 [Cons. Laws, ch. 20]), while the statute provides a lower interest rate for obligations of municipal corporations. (Another statute contains a similar provision as to State obligations. Laws of 1939, ch. 586.) We are called upon to say whether the Legislature indulged in an unreasonable and palpably arbitrary classification when it provided for this differentiation. (People ex rel. Bryant v. Zimmerman, 241 N. Y. 405; Radice v. New York, 264 U. S. 292; People v. Klinck Packing Co., 214 N. Y. 121.) The soverign and public character of the favored debtors and the lower rates of interest usually applicable on their borrowings may well form a basis for differentiation. The classification cannot be deemed unreasonable. * * * To be sure, compensation, when not paid coincidently with the taking of the property, must include some sum in addition to the bare value of the property at the date of taking for the delay in making payment, so that the compensation may be just. Without the addition of some sum, the requirement of just compensation constitutionally guaranteed, would not be met. (Jacobs v. United States, 290 U. S. 13; Phelps v. United States, 274 U. S. 341.) In the absence of evidence as to what such additional sum should be, interest, as provided by law, meets the constitutional requirement. (Seaboard Air Line Ry. Co. v. United States, 261 U. S. 299.) Claimants’ contention that interest at the rate of four per centum per annum is so unreasonably low as to deprive them of just compensation is not supported by any evidence, and is contrary to common experience.” (Italics supplied.)
There is no constitutional requirement that just compensation for delay in making payment must be exactly equal to 1 ‘ the fair rate of interest for the use of money in the open money market in New York City where money is borrowed without collateral and where the lender does not receive income tax benefit ’ ’, the test urged by claimants. It is probably true that such rate is higher today, and has been since February, 1958, than it was in 1939, when this statute was first enacted. Yet in 1956 the Legislature, knowing that the legal rate of interest was 6%, reiterated its mandate that the city should pay only 4% on a condemnation award.
Such a classification by a State Legislature, based on ‘ ‘ the soverign and public character of the favored debtors and the *612 lower rates of interest usually applicable on their borrowings ”, does not violate the Fourteenth Amendment. (See the cases cited in the affirmance in A. F. & G. Realty Corp. v. City of New York, 313 U. S. 540, supra.) We are not dealing here with the rate of 2%, for example, which would be “ so unreasonably low as to deprive [claimants] of just compensation ”.
The decisions relied upon by claimants do not support their contention.
In Seaboard Air Line Ry. v. United States (261 U. S. 299) the court said, per Butler, J. (p. 306): “ The requirement that ‘ just compensation ’ shall be paid is comprehensive, and includes all elements and no specific command to include interest is necessary where interest or its equivalent is a part of such compensation. Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added. The legal rate of interest, as established by the South Carolina statute was applied in this case. This was a ‘ palpably fair and reasonable method of performing the indispensable condition of the exercise of the right of eminent domain, namely, of making “ just compensation ” for the land as it stands, at the time of taking.’ ” (Italics supplied.)
This holding was reiterated and the language repeated with approval in Phelps v. United States (274 U. S. 341) and in Jacobs v. United States (290 U. S. 13). Our Court of Appeals cited all these cases in the Bronx River Parkway case {supra, p. 54) in holding that 4% was the “ proper rate ” to be paid by a municipality despite the fact that 6% was the “ proper rate ” to be paid by a nonpublic debtor.
The United States Supreme Court affirmed (A. F. & G. Realty Corp. v. City of New York, 313 U. S. 540, supra), citing two groups of cases. Violet Trapping Co. v. Grace (297 U. S. 119) is typical of the first group. In that case the court said (p. 120): ‘ ‘ While this Court, when the contract clause of the Federal Constitution is involved, may determine for itself the meaning and effect of the contract * * # we find no reason for disagreeing with the conclusion of the state court. The questions sought to be raised under the due process and equal protection clause of the Fourteenth Amendment are without merit.” (Citations omitted.)
*613 The second group includes Puget Sound Co. v. Seattle (291 U. S. 619). There the court said (p. 624): “ We need not stop to inquire whether the equal protection clause was designed to protect the citizen from advantages retained by the sovereign * * *. It is enough for present purposes that the equal protection clause does not forbid discrimination with respect to things that are different. The distinctions between the taxing sovereign and its taxpayers are many and obvious.”
La Porte v. State of New York (6 N Y 2d 1) sustained the constitutionality of subdivision 1 of section 19 of the Court of Claims Act, directing: “ If a claim which bears interest, is not filed until more than six months after the accrual of said claim, no interest shall be allowed between the expiration of six months from the time of such accrual and the time of the filing of such claim. ’ ’
The court said (pp. 6-7): “ It is clear that no constitutional mandate is violated by the denial of interest during periods while the owner has enjoyed the full beneficial use of his premises ’ ’. But it does not follow, as claimants contend, that the owner is entitled to the net rental value of his property where he does not get interest at the “ proper rate ” fixed by statute, and approved by our Court of Appeals and by the United States Supreme Court.
The Corporation Counsel does not oppose the motion on the merits. He argues, however, that the motion is premature, that after the final decree fixes the interest at 4then it may be proper for the claimants to attempt to enforce the payment of the higher rate of interest, by way of a motion to compel the Comptroller to make payment of such higher rate of interest or by way of an appeal from the final decree.
This objection is overruled. Since interest at a proper rate is an integral part of the compensation to which claimants are entitled, the final decree should adjudicate on the merits what such proper rate is. Claimants would then have an adjudication of unquestioned finality which they can carry to the Court of Appeals, if so advised, and if any appeal is taken from the principal amount of any award, the proper rate of interest can be disposed of on the same appeal.
Accordingly, the final decrees should recite claimants ’ application, as set forth in their moving papers, and provide that their application is denied, and that interest on the award is allowed at the rate of 4% per annum from February 28, 1958 to the date of payment.